```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                            :
GLORIA OLIVER,                              :      CASE NO. 1:10-CV-2667
                                            :
            Plaintiff,                      :
                                            :
     v.                                     :      OPINION AND ORDER
                                            :      [Resolving Doc. No. 31]
ST. LUKE'S DIALYSIS, LLC d/b/a              :
SHAKER SQUARE DIALYSIS, et al.,             :
                                            :
            Defendants.                     :
                                            :
-------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this age, race, and gender discrimination suit, Defendants St. Luke's Dialysis, Janet Hutchins, and Ann Vogt move for summary judgment on each of Plaintiff Gloria Oliver's claims. [Doc. 31.] The Defendants say Oliver's claims that St. Luke's Dialysis fired her because of her age, race, and gender are unsupported by evidence, and that Oliver was instead fired because she threatened a patient. [Doc. 31-1.] Plaintiff Oliver opposes the motion. [Doc. 38.] In deciding the Defendants' motion for summary judgment, then, the Court must consider whether Oliver shows that she was fired because of her age, race, or gender.

For the following reasons, the Court **GRANTS** the Defendants' motion.

**I. Background**

Plaintiff Gloria Oliver brings this discrimination action against her former employer St. Luke's Dialysis, LLC—a company that operates a kidney dialysis center in Shaker Heights, Ohio—and her direct and regional supervisors at St. Luke's, Janet Hutchins and Ann Vogt. [Doc.

-1-

Case No. 1:10-CV-2667
Gwin, J.

24.] Oliver, an African-American woman, worked as a patient care technician for St. Luke's Dialysis beginning in 1999. In August 2007, DaVita, Inc. acquired St. Luke's. As part of that acquisition, DaVita hired Oliver as a technician and kept her at the same pay level. Oliver was forty-nine years old at the time she was hired.

Though Oliver says she received awards for excellent service during her employment at St. Luke's, [Doc. 31-3 at 31], she was also disciplined for several performance issues. In November 2007, Oliver received two written warnings, one for insubordination and the other for altering her assignments without authorization. [Doc. 31-3 at 57-60.] In November 2008, Oliver received another written warning for an attendance policy violation. [Doc. 31-3 at 54.] The written warnings noted that "[a]ny violation going forth of behavior policy and procedure may lead to further corrective action, suspension up to and including termination." [Doc. 31-3 at 55, 58.]

Oliver incurred additional disciplinary action on September 15, 2009, when St. Luke's Group Facility Administrator Francesco Reale and a group of visiting pharmaceutical company representatives heard Oliver say to a patient: "Are you bleeding all over the floor and not telling me? I should slap you in the head." [Doc. 31-3 at 23; Doc. 31-4 at 1-2.] Reale reported Oliver's comment to Defendant Janet Hutchins, a Facility Administrator, and to Human Resources representative Yolanda Fowler. [Doc. 31-4 at 2.] When Reale and Hutchins spoke with Oliver about the incident, Oliver admitted making the comment but said that she was merely joking with the patient, and that the patient understood the joke. [Id.; Doc. 31-3 at 7, 23, 25, 61.] Oliver acknowledged, however, that someone "could have misconstrued" her comment as a threat. [Doc. 31-3 at 26, 36.]

Later that day, St. Luke's terminated Oliver for threatening a patient, citing the DaVita company's zero tolerance policy for workplace threats and Plaintiff Oliver's history of disciplinary

Case No. 1:10-CV-2667
Gwin, J.

actions. [Doc. 31-3 at 59-60; Doc. 31-4 at 2-3 (failure to comply with "zero tolerance" policy for workplace violence "may result in discipline, up to and including termination.").] After her termination, Oliver filed an age discrimination charge with the Ohio Civil Rights Commission. [Doc. 31-2.] Oliver says she also filed the charge with the Equal Employment Opportunity Commission. [Doc. 38 at 2-3.]

Oliver then brought the instant suit, alleging that the Defendants discriminated against her on the basis of age, race, and gender. [Doc. 1-1; Doc. 24.] Oliver says circumstantial evidence supports finding that St. Luke's decision to discharge her was motivated by a prohibited animus. Oliver contends that two St. Luke's employees—Erica Moorer, a Caucasian female who Oliver says was twenty-five years old at the time, and Tim Rhein, a Caucasian male who Oliver says was twenty-six years old at the time—committed similar misconduct but were not similarly disciplined. Specifically, Oliver says Rhein directly threatened a patient but was not terminated. [Doc. 31-3 at 30-33.] Oliver adds that she believes she was replaced by Lynette Fellows, who Oliver says was twenty-five years old at the time and paid less than Oliver, because Fellows finished some of Oliver's work on the day of Oliver's discharge. [Doc. 38 at 7; Doc. 38-1.]

The Defendants now move for summary judgment on Oliver's claims. They say that St. Luke's legitimately fired Oliver for making statements to a patient that could be construed as a direct threat. [Doc. 31-1.]

**II. Legal Standard**

Under Federal Rule of Civil Procedure 56(a), a grant of summary judgment is proper if "the movant shows there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. 56(a). The moving party bears the initial burden to show the absence

Case No. 1:10-CV-2667
Gwin, J.

of a genuine dispute of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). This burden is met by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In deciding a motion for summary judgment, the Court "considers the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party." *Lenscrafters, Inc. v. Robinson*, 403 F.3d 798, 802 (6th Cir. 2005) (citations omitted).

### III. Analysis

*A. Age, Race, and Gender Discrimination Claims*

Oliver brings claims for discriminatory termination based on her age, race, and gender, under Ohio Revised Code § 4112.02 and the Age Discrimination in Employment Act.[1] Because Oliver bases her discrimination claims on circumstantial evidence, the Court evaluates those claims under the *McDonnell Douglas* burden-shifting framework. *See Aldridge v. City of Memphis*, 404 F. App'x 29, 40 n.12 (6th Cir. 2010) (*McDonnell Douglas* proof structure applies to ADEA age discrimination claim); *Lockett v. Marsh USA, Inc.*, 354 F. App'x 984, 991-92 (6th Cir. 2009) (applying *McDonnell*

---

[1] In her amended complaint, Oliver does not specify the state law or federal law basis for her gender discrimination claim. Based on Oliver's prior filings, the Court construes her claim as one brought under ORC § 4112.02, and clarifies that 42 U.S.C. § 1981 prohibits race, not gender, discrimination. The Court dismissed Oliver's gender discrimination claims under Title VII for failure to state a claim; Oliver's amended complaint asserts a race discrimination claim only under Ohio state law. Moreover, Oliver may bring her ADEA claim only against St. Luke's Dialysis, as the ADEA does not provide for individual liability. In any case, because all of Oliver's discrimination claims are subject to *McDonnell Douglas*'s burden-shifting test, the Court analyzes them together.

Case No. 1:10-CV-2667
Gwin, J.

*Douglas* test to race, gender, and age discrimination claims brought under O.R.C. § 4112.02). Under this test, a plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. Finally, the burden shifts back to the plaintiff to prove that the defendant's offered reason was mere pretext for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

1. Prima Facie Case

To establish a prima facie case of age, race, or gender discrimination, Oliver bears the burden of demonstrating that (1) she was a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) either she was replaced by a person outside the protected class, or she was treated differently than a similarly-situated non-protected employee. *See, e.g.*, *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992); *Harris v. Metro. Gov't of Nashville and Davidson Cnty., Tenn.*, 594 F.3d 476, 485 (6th Cir. 2010).

The Defendants do not dispute the first and third prongs of this test. Instead, they argue that Oliver cannot show she was qualified for her job or that she was treated differently than any similarly-situated younger, white, or male employees. To establish that she was "qualified" for a position already held, an employee "must demonstrate that she was meeting her employer's legitimate expectations and was performing to her employer's satisfaction." *Warfield v. Lebanon Correctional Inst.*, 181 F.3d 723, 729 (6th Cir. 1999). "[W]hen assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000). In addition, to show disparate treatment, an employee must show that she was

Case No. 1:10-CV-2667
Gwin, J.

treated differently than individuals outside the protected class who are nearly identical in all relevant respects. *Noble v. Brinker Intern., Inc.*, 391 F.3d 715, 728-29 (6th Cir. 2004); *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000) (Courts "should not demand exact correlation, but should instead seek relevant similarity."). Because Oliver offers insufficient admissible evidence to show that she was treated differently from a similarly situated and non-protected employee, she fails to make out a prima facie case of discrimination.

Oliver offers some material evidence that was qualified for her position at St. Luke's: Oliver says she received pins and gift cards for good work performance. [Doc. 31-3 at 86; Doc. 38-1 at 1.] However, she does not provide sufficient admissible evidence to show that any similarly-situated St. Luke's employee was treated more favorably. Though Oliver says two younger, Caucasian, female and male employees—Erica Moorer and Tim Rhein—used profanity around patients but were not discharged, this comparison fails because Oliver was discharged for the more serious violation of making statements perceived as direct threats to a patient. *See Johnson v. Interstate Brands Corp.*, 351 F. App'x 35, 40 (6th Cir. 2009) (finding conduct of similarly-situated employees "must be of comparable seriousness—*i.e.*, similar in kind and severity." (citations omitted)). And, though Oliver presents evidence that Rhein threatened a patient, [Doc. 31-3 at 34; Doc. 38-2], Oliver admits that she did not report Rhein's conduct and presents no admissible evidence that the relevant decision makers at St. Luke's even knew about Rhein's threat.[2] *Cf. Johnson,* 351 F. App'x at 39 (finding

---

[2]This case is unlike *Campbell v. Univ. of Akron*, 211 F. App'x 333 (6th Cir. 2006), where the Sixth Circuit found, based on evidence that an employer's policy was commonly violated, a "juror could easily make the small inferential step that the [employer] must have known" individuals similarly situated to the plaintiff were violating the policy but were not similarly disciplined. *Id.* at 344. Here, Plaintiff Oliver's arguments would have this Court draw the larger and unjustified inference that the Defendants knew of Rhein's threat though Oliver says she did not report the incident, provides no evidence that anyone else reported it, and does not present admissible evidence that Rhein's behavior was so pervasive that the Defendants must have known of it.

Case No. 1:10-CV-2667
Gwin, J.

whether plaintiff and similarly-situated coworker's "discipline was determined by the same ultimate decision makers" to be the relevant disparate treatment inquiry in discriminatory discharge).

Oliver's additional conclusory assertion that she was replaced by a younger employee, Lynette Fellows, is insufficient to support a prima facie case of age discrimination. Though evidence that a plaintiff was discharged and replaced by a significantly younger employee may, in some cases, support an inference of age discrimination, Oliver's mere speculation that Fellows replaced her does not warrant such an inference in this case. *See* Fed. R. Civ. P. 56(c)(4) (requiring party to set forth specific facts that would be admissible in evidence to forestall summary judgment); *Matsushita*, 475 U.S. at 587 (same). In fact, Oliver admits that Fellows did not possess the required certifications to perform Oliver's job and that she does not know whether Fellows ultimately assumed Oliver's position or responsibilities. [Doc. 31-3 at 40]; *see Clevidence v. Wayne Sav. Cmty. Bank*, 143 F. Supp. 2d 901, 908 (N.D. Ohio 2001) ("The first person who dealt with [the plaintiff's] responsibilities after her firing does not become a 'replacement' for the purpose of her prima facie case. A person is considered 'replaced' when another employee is hired or reassigned to perform the plaintiff's duties." (citation omitted)).

Accordingly, because Oliver fails to raise an issue of material fact as to whether she was treated less favorably than a similarly-situated younger, Caucasian, or male employee or was replaced by a significantly younger employee, Oliver has not made out a prima facie case of discrimination.

2. Pretext

Moreover, even if Oliver could establish a prima facie case of age, race, or gender discrimination, Oliver's claims also fail at the pretext step. The Sixth Circuit has explained that "[a]t

Case No. 1:10-CV-2667
Gwin, J.

the summary judgment stage, the [pretext] issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009). The plaintiff has at least three avenues for showing pretext: "(1) that the [employer's] proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Id.* at 400.

Here, the Defendants have enunciated a legitimate, nondiscriminatory reason for terminating Oliver—that Oliver spoke to a patient in a manner that could be interpreted as a threat in front of St. Luke's supervisors, pharmaceutical representatives, and two trainees—and Oliver has not raised an issue of material fact as to whether the Defendants' stated reason is pretextual.

First, there is no evidence that the Defendants' stated reason for terminating Oliver lacks a factual basis, *see id.* at 400, as Oliver herself admits to making the statement and acknowledges that the statement could be interpreted as a threat. In fact, Oliver says that her communication skills needed improvement, a weakness she says contributed to the incident resulting in her discharge. [Doc. 31-3 at 6-7.]

Second, Oliver's evidence does not suggest that the Defendants' stated reason did not actually motivate the decision to terminate Oliver. *See id.*; *see also Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 396 (6th Cir. 2008) (plaintiff must show "the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext" (quoting *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1083-84 (6th Cir. 1994), *overruled in part on other grounds by Geiger v. Tower Automotive*, 579 F.3d 614 (6th Cir. 2009))). St. Luke's disciplined Oliver several times for violating company policy and warned her that future

-8-

Case No. 1:10-CV-2667
Gwin, J.

violations could result in corrective action, suspension, or termination. When Facility Administrator Reale, along with a group of visiting pharmaceutical representatives, overheard what Reale interpreted as a direct threat to a patient, Reale and other St. Luke's administrators discussed this policy violation with Oliver, who admitted making the statement. Despite any understanding between Oliver and the patient that she meant her comments as a joke, Oliver admits that those unfamiliar with her communication style could interpret the statement as a threat. [Doc. 31-3 at 7, 26, 61.]

Third, the Defendants' stated reason was sufficient to motivate the decision to terminate Oliver. *See Chen*, 580 F.3d at 400. Previous disciplinary action against Oliver warned her of possible discharge upon future company policy violations. And the DaVita company's guidelines, which apply to St. Luke's employees, state that "[a]cts or threats of physical violence whether expressed or implied" may result in discipline, "up to and including termination." [Doc. 31-4 at 3.]

Oliver additionally argues that the Court must find the Defendants' stated reason for firing her is pretext for age discrimination because Defendant Hutchins stated that St. Luke's could replace Oliver with two lower-paid employees. [Doc. 38 at 13; Doc. 31-3 at 25.] But employment decisions based on financial motivations, rather than age, do not support an age discrimination claim, and Oliver offers only her own speculation that any such replacements would be younger employees. [Doc. 38-1 at 3.] *See Lyon v. Ohio Educ. Ass'n and Prof'l Staff Union*, 53 F.3d 135, 138 (6th Cir. 1995) (plaintiff cannot recover for age discrimination where employee's cost, rather than age, motivated adverse employment action (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993)); *see also Harris*, 594 F.3d at 485 (plaintiff retains ultimate burden of showing "age was the 'but-for' cause of the employer's adverse action." (quoting *Gross v. FBL Fin. Servs., Inc.*, --- U.S. ----, 129

Case No. 1:10-CV-2667
Gwin, J.

S. Ct. 2343, 2351 (2009)).

Thus, because Oliver does not present admissible evidence sufficient to raise an issue of material fact as to whether the Defendants' stated reason for terminating her was pretextual, her claims fail as a matter of law.

### B. Election of Remedies

As a separate matter, Plaintiff Oliver's prior age discrimination charge to the Ohio Civil Rights Commission precludes her from now bringing a state-law age discrimination claim. [Doc. 31-1 at 16.] Where a plaintiff has filed an age discrimination charge with the Ohio Civil Rights Commission, Ohio's election of remedies scheme generally prohibits a later civil suit for age discrimination. O.R.C. § 4112.05; *Hillery v. Fifth Third Bank*, No. 2:08CV1045, 2009 WL 1322304, at *2-5 (S.D. Ohio May 11, 2009); *Senter v. Hillside Acres Nursing Ctr. of Willard*, 335 F. Supp. 2d 836, 851 (N.D. Ohio 2004). Several exceptions to this scheme allow a plaintiff to bring a later state law age discrimination claim—including where the plaintiff files the Ohio Civil Rights Commission charge contemporaneously or after the civil lawsuit, or files the charge only for procedural purposes. *Hillery*, 2009 WL 1322304, at *3. However, Oliver's age discrimination charge to the Ohio Civil Rights Commission expressly notes that filing the charge bars Oliver from instituting later civil action. [Doc. 31-2 at 7.] And Oliver has presented no evidence—nor does she make any argument in opposition to summary judgment—suggesting that any of these exceptions applies in this case. Accordingly, the Court grants summary judgment to the Defendants on Oliver's state-law age discrimination claim on these grounds, as well.

### C. State-Law Claims against Defendants Vogt and Hutchins

Lastly, Defendants Vogt and Hutchins argue that Plaintiff Oliver's state-law discrimination

Case No. 1:10-CV-2667
Gwin, J.

claims against them must fail because Oliver presents no evidence that either Vogt or Hutchins made the decision to fire Oliver. [Doc. 31-1 at 19.] The Court notes that Defendant Hutchins's role in investigating Oliver's threat, and Hutchins's signature on Oliver's termination letter, likely creates an issue of material fact at least as to Hutchins's involvement in Oliver's discharge. However, because Oliver fails to make out a prima facie case of discrimination and fails to show that the stated reason for firing her was pretextual, summary judgment is proper as to all the Defendants.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the Defendants' motion for summary judgment.

IT IS SO ORDERED.

Dated: August 11, 2011					s/	*James S. Gwin*
						JAMES S. GWIN
						UNITED STATES DISTRICT JUDGE